El Pueblo de Puerto Rico, demandante y apelado, *v.* Rodolfo Chardón, acusado y apelante.

No. 4799.—*Sometido:* Febrero 7, 1933. *Resuelto:* Febrero 10, 1933.

*R. Hernández Matos,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Rodolfo Chardón fué declarado culpable de un delito de acometimiento y agresión con circunstancias agravantes y condenado a sufrir tres meses de cárcel y a pagar $100 de multa, por la Corte de Distrito de Ponce. Apeló el acusado de la sentencia y en su alegato manifiesta que la corte inferior erró al no darle crédito a los testigos de la defensa y sí a los de El Pueblo, al tomar conocimiento judicial del carácter mortífero del arma utilizada para realizar la agresión, y al imponer al acusado una pena excesiva.

Los dos primeros errores se relacionan con la apreciación de la prueba. Los testigos de la acusación declaran que el acusado y el agredido son hermanos; que con anterioridad a la fecha de la acusasión existía una seria tirantez de relaciones entre el acusado y sus familiares; que el acusado, para la fecha del suceso, vivía en una finca perteneciente a la sucesión Chardón; que en esa finca tenía Julio Chardón, hermano del acusado, y quien es contratista de pozos, unos tubos y utensilios que utilizaba para hacer pozos por perforación del terreno; que los tubos y utensilios eran de su pertenencia; que el día de autos se personaron Julio Chardón y Juan Bautista Chardón, el agredido, hermano del acusado, y dos peones llevados por ellos con un "truck" para sacar los tubos y utensilios de la finca; que eran como las nueve de la mañana del día 21 de marzo de 1931; que llegaron al portón de la finca que está a la orilla de la carretera, y dejando el "truck" con los peones, bajaron Juan Bautista y Julio Chardón y entraron en la finca para ver e inspeccionar los tubos y llevárselos; que la casa de vivienda de la finca en la cual vivía el acusado está situada a corta

distancia del portón; que en el balcón de la casa estaba el acusado acompañado de sus niños, de corta edad, y de su esposa; que el acusado, tan pronto como vió a sus hermanos Juan Bautista y Julio entrar en la finca, los provocó de palabras e inmediatamente disparó con su rifle un tiro contra Juan Bautista Chardón que estaba de espaldas inspeccionando los tubos, estando su hermano Julio frente a él, como a diez pasos de distancia; que el proyectil dió en el tubo y los fragmentos del mismo se le incrustaron a Juan Bautista en la pierna izquierda; que entonces Juan Bautista y su hermano procedieron a abandonar la finca y cuando salían, que iban a llegar al portón, disparó el acusado un segundo tiro cogiéndolo en la pierna, y yéndose Juan Bautista de cabeza; que Juan Bautista estuvo en el hospital por espacio de doce o trece días, teniendo que salir del mismo por no contar con recursos para permanecer en él. Se presentó como prueba el rifle, que fué entregado por el propio acusado a la policía al verificar ésta la investigación, entregándole también el acusado a la policía unos cuantos proyectiles que según él mismo expresó correspondían al rifle mencionado, que era un rifle calibre 22.

El acusado Rodolfo Chardón declara que había tenido disgustos con sus familiares, y que Juan Bautista y Julio Chardón lo habían amenazado con matarlo y "hacerle los sesos agua"; que el acusado vivía en una finca perteneciente a sus hermanos y el Sr. Matías Vidal, su suegro, y que no tiene propiedad alguna en dicha finca; que en la mañana del 21 de marzo Juan Bautista Chardón y Julio Chardón llegaron al portón de su casa y al preguntarles el acusado qué venían a buscar le contestaron que los tubos; que el acusado les dijo que dejaran esos tubos allí que eran de la sucesión, y ellos habían cogido la bomba y se habían robado una casa de tres mil; que se empezó a insultar, ellos acalorados y el acusado también, y que las mismas cosas que ellos decían se las decía también el acusado, quizá más fuertes; que Juan Bautista Chardón le dijo que por sus pantalones se llevaba

los tubos y le gritó que sacara los niños que lo iba a matar; que el acusado disparó un tiro para ver si se iban; que Juan Bautista sacó un revólver y le provocó de palabras y que entonces el acusado volvió a disparar, hiriéndole; que Juan Bautista no disparó porque el acusado tenía al lado sus hijitos.

Basta leer las declaraciones de los testigos de una y otra parte para llegar a la conclusión de que la corte inferior no cometió los errores que se le atribuyen. Según la prueba de El Pueblo el acusado inició los insultos y luego realizó la agresión, disparando su rifle. Según los testigos de Rodolfo Chardón, fué el agredido quien inició la provocación; pero el propio acusado en su testimonio nos dice que de él partieron ambas cosas, la provocación y la agresión. El mismo Rodolfo Chardón confiesa haberle dicho a sus hermanos que los tubos eran de la sucesión y que ellos habían cogido la bomba y se habían robado una casa de tres mil. Añade que todos estaban acalorados y que el acusado quizá les dijo cosas más fuertes a sus hermanos. Las declaraciones de los testigos de la defensa concuerdan en los demás particulares con el testimonio del acusado. La corte inferior declara que la prueba de la defensa no le merece crédito alguno y dice, muy acertadamente, que aún en el caso de que el acusado hubiese sido provocado, no estuvo justificado en hacer los disparos que hirieron a su propio hermano. Añade la corte que duda mucho de que el agredido tuviese un revólver en la mano, como dicen los testigos de la defensa, porque examinó su mano derecha y está inútil de la misma. Las conclusiones de la corte inferior resultan lógicas y razonables y se basan en la prueba aportada.

En cuanto al arma ofrecida como prueba, la corte dijo que tomaba conocimiento judicial de su carácter mortífero, y que con la misma se podía ocasionar grave daño corporal y hasta la muerte. Sostiene el acusado que el carácter mortífero del arma debe ser objeto de prueba y cita en su apoyo los casos de *El Pueblo* v. *Rivas,* 16 D.P.R. 611, y *El Pueblo*

v. *Oriols,* 27 D.P.R. 208. La definición de lo que es un arma mortífera no favorece la contención del acusado. De acuerdo con los casos citados, es mortífera el arma que puede ocasionar la muerte o producir grave daño corporal. Para determinar si el arma es o no mortífera, una vez identificada, no es necesario presentar prueba, por tratarse de una cuestión de derecho, a menos que el carácter del arma sea dudoso o el hecho de que sea mortífera o no dependa de la forma en que se use, en cuyo caso debe producirse prueba.

En el presente caso el arma fué identificada. Se trata de un rifle calibre 22, con proyectiles de plomo, que fué disparado por el acusado contra su hermano Juan Bautista Chardón, hiriéndole en una pierna. No estuvo desacertada la corte inferior al apreciar el carácter mortífero del arma utilizada para realizar la agresión. Es obvio que con ella puede inferirse grave daño corporal. Es precisamente en casos como éste que huelga la presentación de prueba, según tiene declarado este tribunal en las decisiones citadas por el propio acusado.

Se alega por último que la pena es excesiva. No lo entendemos así nosotros. La prueba de El Pueblo, a la cual dió la corte completo crédito, y aun el testimonio del propio acusado, demuestran que éste innecesariamente disparó contra uno de sus hermanos y los provocó a los dos, imputándoles el robo de una finca. Basta examinar la prueba para llegar a la conclusión de que la corte, lejos de imponer una pena excesiva, estuvo muy moderada en el uso de su discreción.

*Debe confirmarse la sentencia apelada.*